UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| PATRICK ALAN BENFIELD, ET AL. | CIVIL ACTION NO. 18-0034 |
|---|---|
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| JOE MAGEE, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULNG

Patrick Benfield ("Benfield") and Brian Warren ("Warren") were paramedics with the Desoto Parish Emergency Medical Service ("EMS") where Joe Magee ("Magee") was the administrator. [Record Document 1 at 2–3]. Magee fired Benfield and Warren after the latter wrote a letter critical of the management of the Desoto Parish EMS to a member of the Desoto Parish Police Jury. [*Id.* at 5, 7]. Plaintiffs filed this 42 U.S.C. § 1983 action alleging violations of their free speech rights and of Benfield's right of free association. [*Id.* at 10–11]. Benfield also asserted a claim under Louisiana's whistleblower statute. [*Id.* at 11]. Magee responded with the instant motion to which the parties have filed an opposition and a reply. [Record Documents 5, 14, and 17]. Benfield has abandoned his Louisiana whistleblower claim, and Magee is entitled to qualified immunity on Benfield's free association claim; the motion is **GRANTED** as to these claims. Because Magee's motion does not address Benfield's free speech claim, the motion is **DENIED** as to that claim. The motion is also **DENIED** as to Warren's free speech claim because the facts alleged establish that his letter was protected speech.

1

I. **Background**

In Louisiana, paramedics must complete annual training and biennial recertification, the records of which are sent to the National Registry of Emergency Medical Technicians ("NREMT"). [Record Document 1 at 3]. The recertification forms include a box for the medical director to check, indicating his approval of the training hours completed. [*Id.* at 4]. Allegedly at Magee's instruction, Warren would check this box when completing the NREMT forms without first receiving approval from Joseph Farquhar ("Farquhar"), the medical director. [*Id.* at 4, 6]. Benfield was among the employees on whose NREMT forms Warren checked off Farquhar's approval, but Benfield did not personally participate in Warren's checking off Farquhar's approval. [*Id.* at 6–7].

In June 2015, Warren sent a letter to Jimbo Davlin ("Davlin"), a member of the Desoto Parish Police Jury (the "Davlin Letter"). [*Id.* at 5]. The letter criticized practices at the Desoto Parish EMS and recommended multiple changes, including replacing certain administrators. [Record Document 1-2]. Allegedly, Magee then retaliated against Warren. [Record Document 1 at 5].

Eighteen months later, the new co-medical director of the Desoto Parish EMS asked Warren how he and Benfield had become recertified. [*Id.* at 6]. Warren explained that, per longstanding practice, he had checked the box on the NREMT forms indicating Farquhar's approval of the training hours. [*Id.*]. A week and a half later, Magee allegedly told Warren to quit "before something bad happened." [*Id.*]. Around the same time, Magee asked Benfield to attest that Magee had not authorized Warren indicate Farquhar's approval on the NREMT forms. [*Id.*

at 6–7]. Benfield refused. [*Id.* at 7]. Magee then terminated both men for falsifying records. [*Id.* at 7–8].

II. <u>Law and Analysis</u>

    A. <u>Motion to Dismiss Standard</u>

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In determining whether the plaintiff has stated a plausible claim, the court must construe the complaint in the light most favorable to her, *see In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all well-pleaded factual allegations, *see Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

    B. <u>Warren's Claim</u>

Magee argues that Warren's First Amendment claim fails because he did not speak on a matter of public concern and because he insufficiently alleged a causal connection between the Davlin Letter and his termination nineteen months later. [Record Document 5-1 at 10–15].

Warren contends that he spoke on a matter of public concern because the Davlin Letter addressed EMS operations. [Record Document 14 at 8–14]. He also insists that he adequately pleaded causation by identifying a series of allegedly retaliatory actions that occurred between the date of the Davlin Letter and his termination. [*Id.* at 14–16].

To establish a claim for retaliatory termination following an exercise of free speech, a plaintiff must show that

> (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) her speech was a substantial or motivating factor in the defendant's adverse employment action.

*Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citing *DePree v. Saunders*, 588 F.3d 282, 286–87 (5th Cir. 2009); *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992)).

### 1.  Adverse Employment Action

Discharge is a paradigmatic adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001) (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). Because Magee fired Warren, this element is satisfied.

### 2.  Speech Involving a Matter of Public Concern

The second prong requires Warren to have spoken "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The Fifth Circuit approaches this question of law through two inquiries: (1) whether the plaintiff spoke in his "capacity as citizen, not employee" and (2) whether his speech's subject matter was of public concern. *Gibson v. Kilpatrick (Gibson III)*, 838 F.3d 476, 481

4

& n.1 (5th Cir. 2016) (citing *Gibson v. Kilpatrick (Gibson II)*, 773 F.3d 661, 667 (5th Cir. 2014)).

### a. Warren's Capacity as Speaker

The test for the capacity in which an employee speaks is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). Factors relevant to this determination include whether the speech was "job-required," *Anderson v. Valdez*, 845 F.3d 580, 592 (5th Cir. 2016) (quoting *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007)), whether the employee spoke "in the course of conduct subject to the employer's control," *id.* at 596, whether a supervisor instructed the employee to make the statement, *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 390 (5th Cir.) (per curiam), *cert denied.*, 138 S. Ct. 212 (2017), whether the speech benefitted the employer, *id.*, and whether the speech was addressed to persons outside the ordinary chain of command, *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

Nothing suggests that Warren's duties for the Desoto Parish EMS included addressing concerns to elected officials. Although the suggestions for improvement in the Davlin Letter arguably benefitted Warren's employer, Magee's alleged retaliation suggests that the letter was unwelcome. Magee neither ordered Warren to create the letter nor had any right to control its contents.

Magee's most significant argument is that Davlin as a member of the Desoto Parish Police Jury was within the chain of command. [Record Document 5-1 at 10–13]. Under Louisiana law, the Desoto Parish Police Jury appoints the Desoto Parish Ambulance Service District Board of Commissioners, whose members may be removed only for cause and by a two-

thirds vote of the police jury. La. Stat. Ann. §§ 33:9055–.1 (2017). The board then appoints the director of the ambulance service district, who is removable at will. *Id.* §§ 33:9056(B)(6), 9057(A). The parties refer to Magee as the "Administrator of the Desoto Parish EMS." [Record Document 1 at 2]. Although it is unclear whether Magee is the director as that term is used in the statute or whether he serves underneath the director, in either case, Davlin is not personally able to discipline Magee or address Warren's employment-related disputes. At most Davlin has a single vote that could contribute to the two-thirds supermajority necessary to replace members of the board of commissioners.[1] Hence, Davlin is outside of the chain of command. Because the majority of the factors support the view that Warren "sp[oke] outside of [his] chain of command and outside of [his] duties," *Anderson*, 845 F.3d at 602 (citing *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 472–73 (5th Cir. 2014)), the Court holds that he has alleged facts that, if proven, establish that the Davlin Letter is citizen speech.

### b. Content, Form, and Context of Warren's Speech

Speech involves a matter of public concern if it "relat[es] to any matter of political, social, or other concern to the community" or if it is a "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (first quoting *Connick v. Thompson*, 461 U.S. 138, 146 (1983); then quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). A "mere scintilla of speech regarding a matter of public concern" justifies treating the entire statement as mixed speech—that is, as neither wholly

---

[1] The Court acknowledges that Davlin may in fact have more direct power over Magee or the conditions at the Desoto Parish EMS, but at this stage of litigation, the Court must rely on the pleadings and the inferences that can be drawn from them.

private nor wholly public. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007). In such a case, a court must evaluate the speech's content, form, and context, weighing the latter two factors more heavily. *Gibson III*, 838 F.3d at 487 (citing *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999)).

The content factor addresses the subject matter of the speech. Subjects such as official misconduct or racial discrimination are virtually per se matters of public concern. *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008). On the other hand, the content of a speech is private when it describes "internal grievance[s]," *Gibson III*, 838 F.3d at 485 (quoting *Graziosi v. City of Greenville*, 775 F.3d 731, 738 (5th Cir. 2015)), or criticizes a supervisor's job performance, *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (citing *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 798 n.10 (5th Cir. 1989)). If the public has reason to take interest in the complained-of management practices only "by virtue of the manager's status as an arm of the government," the speech's content is not a matter of public concern. *Id.* (quoting *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 366–67 (5th Cir. 2000), *abrogated in part on other grounds by Twombly*, 550 U.S. 544).

The Davlin Letter is a five-page list of "[t]hings I would address and possibly change if I were the EMS Administrator." [Record Document 1-2 at 1]. The letter confesses that "[a] lot of this is geared towards the employee." [*Id.* at 5]. Warren displays his frustrations as an employee by complaining about the style of administration, the suitability of particular administrators, the lack of standard operating procedures, the need for a system to solicit employee input, the poor design of shift and salary schedules, and the expense of health

insurance. [*Id.* at 1–5]. On the other hand, Warren makes additional recommendations that are more directly related to the public function of the Desoto Parish EMS than to employee welfare: incorporating all parish emergency agencies into a single dispatch area, raising the standard of care provided by paramedics, starting a community paramedicine program, increasing community outreach and engagement, and installing an improved radio system. [*Id.* at 2–5]. Furthermore, the Davlin Letter describes possible racial discrimination and ethical violations at the Desoto Parish EMS and suggests several ways of saving money. [*Id.* at 1–2]. These wide-ranging concerns render the Davlin Letter mixed speech, and the significant amount of public content weighs in favor of finding the letter to be protected speech.

The form of Warren's speech is that of a letter to a Desoto Parish police juror. [Record Document 1 at 5]. Factors relevant to the form inquiry include the speech's audience, *see Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006), whether the statement is immediately accessible to the public, *see Graziosi*, 775 F.3d at 739, and whether the speech designates the speaker in terms of an official role, *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817 (5th Cir. 2000). Two Fifth Circuit cases are particularly illuminating here. In the first, *Modica v. Taylor*, an employee of the Texas Cosmetology Commission ("TCC") wrote a letter to a Texas State Representative accusing superiors of official misconduct. 465 F.3d at 177–78. The Fifth Circuit concluded that Modica's "choice to inform someone outside the TCC of her concerns supports her contention that her speech is public." *Id.* at 181. Similarly, in *Anderson v. Valdez*, an appeals court law clerk wrote to the Chief Justice of the Texas Supreme Court to report an appeals court justice's alleged financial improprieties. 845 F.3d at 587. The clerk then followed the suggestion of the Texas

8

Supreme Court's general counsel and conveyed his concerns to the State Commission on Judicial Conduct. *Id.* The Fifth Circuit held that these facts sufficiently alleged that Anderson's speech was on a matter of public concern. *Id.* at 598–99.

Here, Warren selected the form of a letter to a public official. Because the letter was sent to Davlin, it was not immediately accessible to the public. Warren signed it in his role as an "Emt-P." [Record Document 1-2 at 6]. However, the audience for Warren's speech was a public official with at most indirect authority over the agency for which Warren worked. Some of the citizen-service concerns raised by the Davlin Letter would be of understandable interest to a member of the police jury. Because the form is similar to that of the letters written outside of the immediate chain of command in *Modica* and *Anderson*, this factor weighs in favor of a finding that the Davlin Letter is speech on a matter of public concern.

Context concerns the circumstances surrounding the speech. Speech that is "made solely in 'furtherance of a personal employer-employee dispute'" is not on a matter of public concern. *Salge*, 411 F.3d at 187 (quoting *Kennedy*, 224 F.3d at 372). Relevant factors include whether the speech is made "against a backdrop of widespread debate in the community," *Markos v. City of Atlanta*, 364 F.3d 567, 572 (5th Cir. 2004) (quoting *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 222 (5th Cir. 1999)), whether the speech occurred in proximity to unrelated discipline of the employee, *Graziosi*, 775 F.3d at 739, and whether the speech was made in response to an invitation, *Salge*, 411 F.3d at 187 (citing *Harris*, 168 F.3d at 222). Here, Davlin did not solicit Warren's input and nothing in the pleadings suggests any widespread interest in the operations of the Desoto Parish EMS. In addition, Warren brought his concerns to Davlin only after being

rebuffed by Magee. [Record Document 1-2 at 5–6]. As a result, this factor weighs in favor of finding that the Davlin Letter was not on a matter of public concern.

Because the content of the Davlin Letter renders it mixed speech, the Court must give greater weight to the context and form factors. The context of the letter favors a finding that the speech was private, but its form suggests that it was public. Although the question is close, the extensive amount of identifiably public concerns related to community safety and unrelated to Warren's employment-specific grievances tip the scales enough. The Court finds that Warren has alleged facts that, if true, render the Davlin Letter speech on a matter of public concern.

### 3. *Pickering* Balance

Derived from the holding of *Pickering v. Board of Education*, 391 U.S. at 568, the third prong requires that Warren's "interest in commenting on matters of public concern outweigh[] [Magee's] interest in promoting workplace efficiency," *Burnside*, (citing *DePree*, 588 F.3d at 287; *Click*, 970 F.2d at 113). At the motion-to-dismiss stage, "there is a rebuttable presumption that no balancing is required to state a claim." *Id.* at 629 (citing *Kennedy*, 224 F.3d at 366 n.9). As Magee does not address this element, the Court holds that the presumption is unrebutted and that Warren's claim survives dismissal as to the *Pickering* balance.

### 4. Causation

To state a claim for retaliatory discharge, an employee must allege facts that plausibly lead to the conclusion that his speech was a "substantial or motivating factor" in his termination. *Id.* at 626 (citing *DePree*, 588 F.3d at 287; *Click*, 970 F.2d at 113). This causal connection prong may be satisfied by temporal proximity between the allegedly protected speech and the adverse

employment action or by a series of events from which causation can be inferred. *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (citing *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001)); *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). Here, Warren was fired nineteen months after he sent the Davlin Letter. [Record Document 1 at 5, 8]. The Fifth Circuit has held that a gap of thirteen months between protected speech and an adverse employment action precludes inferring causation without additional facts. *Burnside*, 773 F.3d at 629. Hence, Warren cannot rely upon temporal proximity alone.

Although Warren argues that Magee knew of the letter, [Record Document 14 at 16], an allegation to this effect does not appear in the complaint. Some Fifth Circuit precedent appears to suggest that a complaint must allege that a supervisor had knowledge of the speech in order to state causation. *See, e.g.*, *Anderson*, 845 F.3d at 591. Nevertheless, this Court can infer that Magee knew of the Davlin Letter as its criticisms of Magee's performance are the most plausible explanation for his alleged retaliation. Warren alleges a series of harassing actions in the nineteen months between the Davlin Letter and his firing including denying him a promotion, encouraging him to quit, criticizing his religious beliefs, and falsely accusing him of sexual impropriety. [Record Document 1 at 5]. These acts "follow[ed] the submission of the letter." [*Id.*]. This chronology allows the Court to infer that these acts were a reaction to the letter and presaged Warren's termination. The Court holds that Warren has sufficiently pleaded causation and so has adequately alleged facts that, if true, establish his entitlement to relief on his First Amendment retaliation theory.

5. **Qualified Immunity**

Because Magee has raised a qualified immunity defense, this matter may not proceed to discovery unless Warren alleges conduct that violated clearly established law. *Anderson*, 845 F.3d at 599–600 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The relevant question is whether, on the date of Warren's termination (January 26, 2017), it was clearly established that a government employer could not discharge an employee for similar speech under similar circumstances. [Record Document 1 at 8]. By at least 2008, "both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech." *Davis*, 518 F.3d at 317 (citing *Connick*, 461 U.S. at 146–47; *Pickering*, 391 U.S. at 568; *Teague*, 179 F.3d at 380–82; *Davis v. Ector Cty.*, 40 F.3d 777, 782 (5th Cir. 1994)). "By at least 2014, it was clearly established that an employee's speech made 'externally' concerning 'an event that was not within [his or her] job requirements' was entitled to First Amendment protection." *Anderson*, 845 F.3d at 600 (quoting *Cutler*, 767 F.3d at 472–73). Davlin is an elected representative with only indirect control over the Desoto Parish EMS. Though some of Warren's speech was related to his employment duties, those duties did not require him to speak. Therefore, under the facts alleged, Magee should have known that Warren could not be fired for writing the Davlin Letter. Qualified immunity is inappropriate at this stage of proceedings, and so Warren's free speech claim survives dismissal.

C. **Benfield's Claims**

1. **Free Association**

Benfield alleges that he was fired because Magee believed that Benfield was allied with

Warren. [Record Document 1 at 10]. Magee argues that the First Amendment does not protect Warren and Benfield's workplace relationship. [Record Document 5-1 at 15]. Benfield argues that his association with Warren is protected by analogy to union and political associations. [Record Document 14 at 17–18].

### a. Scope of Benfield's Protected Association

As a threshold matter, a plaintiff asserting a free association claim must plead that he engaged in constitutionally protected associational activity. *Burnside*, 773 F.3d at 626 (citing *Boddie v. City of Columbus*, 989 F.2d 745, 747 (5th Cir. 1993)). The Supreme Court has distinguished two categories of protected association: private association and expressive association. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987). Freedom of private association shields intimate relationships. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619–20 (1984). Any alliance between Warren and Benfield lacks the affective characteristics of those relationships in which one "shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Id.* Simply put, "[r]elationships with colleagues ordinarily are not afforded protection as intimate associations." *Caleb v. Grier*, 598 F. App'x 227, 237 (5th Cir. 2015) (per curiam) (quoting *Hernandez v. Duncanville Sch. Dist.*, No. 3:04 CV 2028 BH(B), 2005 WL 3293995, at *10 (N.D. Tex. Dec. 5, 2005)). As a result, the Court concludes that Benfield does not have an intimate association with Warren.

Because group action aids the assertion of First Amendment rights, the Supreme Court has recognized a right to expressive association "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*, 468 U.S. at 622. The classic

examples of expressive associations are labor unions and political groups, *see Burnside*, 773 F.3d at 629; *Boddie*, 989 F.2d at 750, who need protection from government attempts to "restrict or interfere with . . . [their] advocacy," *E.E.O.C. v. Ass'n of Cmty. Orgs. for Reform Now*, 83 F.3d 418 (5th Cir. 1996) (unpublished). However, as there is no "generalized right of 'social association,'" *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (quoting *City of Dall. v. Stanglin*, 490 U.S. 19, 25 (1989)), a public employee may be fired for disloyalty or incompatibility without violating the First Amendment, *Correa v. Fischer*, 982 F.2d 931, 933 (5th Cir. 1993).

In his opposition, Benfield argues that his association with Warren is protected because he "support[ed] Warren's advocacy on behalf of the citizens of Desoto Parish advocating changes to Desoto Parish EMS." [Record Document 14 at 18]. Confusingly, Benfield alleged that Magee "perceived (incorrectly) that Patrick Benfield was actively providing advice and assistance to Brian Warren." [Record Document 1 at 7 (emphasis added)]. If the First Amendment protects an individual's right to associate in order to advance a particular social or political cause, the amendment also logically protects an employee whose supervisor erroneously believes that the employee has a particular association. *Cf. Waters v. Churchill*, 511 U.S. 661, 677–78 (1994) (plurality opinion) (holding that free speech retaliation by a government employer who does not know of the actual content of the employee's speech is evaluated based on the employer's reasonable belief as to the speech's content). Therefore, whether Benfield was actually assisting Warren (as argued in the opposition) or merely perceived to be assisting Warren (as alleged) is irrelevant. Both associations are potentially protected.

Because the term "ally" as used in the complaint is sufficiently capacious to encompass

an alliance in Warren's free speech activities, [Record Document 1 at 9], it is plausible to infer that Magee terminated Benfield because Magee believed Benfield was supporting or assisting Warren's free speech advocacy. The Court thus holds that Benfield has adequately alleged a protected expressive association with Warren.

### b. Benfield's Retaliation Claim

A public employee's retaliation claim in the free association context has three elements: (1) an adverse employment action; (2) an interest in associating that outweighs the employer's efficiency interests; and (3) a causal relationship between the protected activity and the adverse employment action. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (citing *Breaux*, 205 F.3d at 156, 157 n.12; *Boddie*, 989 F.2d at 747). Benfield's termination is an adverse employment action. *See Serna*, 244 F.3d at 483 (citing *Breaux*, 205 F.3d at 157). Benfield alleged causation because he claims that he was fired "because . . . [he] was viewed as being an ally of . . . Warren." [Record Document 1 at 9]. Because the balancing test here parallels the *Pickering* balance, *see Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 444 (5th Cir. 1999) (citing *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996)), the Court holds that the rebuttable presumption that the *Pickering* balancing test is satisfied at the motion-to-dismiss stage applies equally to the balancing test element of a free association retaliation claim, *see Burnside*, 773 F.3d at 628 (citing *Kennedy*, 224 F.3d at 366 n.9). As Magee does not rebut this presumption, the Court finds Benfield's retaliation claim adequately pleaded.

### c. Qualified Immunity

Magee has claimed qualified immunity, [Record Document 5 at 1], and so Benfield must

demonstrate that it was clearly established that his association with Warren was protected such that any reasonable official in Magee's position would have known that Benfield could not be terminated on the basis of that association. By 2017, it was clearly established that individuals had a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts*, 468 U.S. at 622. What is less clear is the extent to which this right exists for an employee who assisted or was perceived to have assisted another employee in exercising the latter's free speech rights. While it seems unlikely that a formally constituted group is necessary in order to maintain a free association claim, Benfield has pointed the Court toward no precedent that clearly establishes that assisting one other person in the exercise of First Amendment rights constitutes protected association. The precedent Benfield cites applies on its own terms only to formal associations—"[w]e are persuaded that in 1987 it was clear that the First Amendment protects an employee's right to associate <u>with a union</u>." *Boddie*, 989 F.2d at 748 (5th Cir. 1993) (emphasis added). *Boddie* extended this holding to protect non-members' workplace friendships with <u>union members</u>. *See id.* at 751. The Court has located no additional precedent clearly establishing Benfield's desired associational right.[2]

---

[2] Fifth Circuit precedent is clearly established with respect to the right to associate with unions or professional organizations, *see Lawson v. City of Monroe*, 579 F. App'x 305 (5th Cir. 2014) (per curiam) (union); *Lindberg v. Bossier Par. Ambulance Serv. Dist.*, 402 F. App'x 898 (5th Cir. 2010) (per curiam) (union); *Hobbs v. Hawkins*, 968 F.2d 471 (5th Cir. 1992) (union); *Montgomery v. Trinity Indep. Sch. Dist.*, 809 F.2d 1058 (5th Cir. 1987) (per curiam) (unincorporated professional association); *Prof'l Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cty. Cmty. Coll. Dist.*, 730 F.2d 258 (5th Cir. 1984) (unincorporated professional association); *Allaire v. Roger*, 658 F.2d 1055 (5th Cir. Unit A Oct. 1981) (professional association); and the right to participate in organized political activities or associate with political figures, *see Burnside*, 773 F.3d 624 (membership in political action committee); *Hernandez v. Brownsville Indep. Sch. Dist.*, 71 F.3d 878 (5th Cir. 1995) (unpublished) (family association with former mayor); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992) (participation in political activities surrounding a school board election);

The most analogous precedent that the Court has located is *Burris v. Willis Independent School District*, 713 F.2d 1087 (5th Cir. 1983). As a school district's director of vocational education, Burris decided to rescind a policy of allowing certain teachers to drive district-owned trucks. After a faction of the school board that supported Burris's decision lost seats in an election, his contract was not renewed. *Id.* at 1089, 1094–95. The Fifth Circuit held that Burris may have been engaged in protected associational activity due to his relationships with the board members who supported his plan regarding the trucks. *Id.* at 1094–95. Because resolution of the question required additional factual development, the Fifth Circuit remanded the case. *Id.* at 1095. *Burris* thus stands for the proposition that associating with officials for the purpose of encouraging or enforcing policy changes may be a protected association. The critical factual distinction between Burris and Benfield, however, is that Burris was associating directly with elected officials with the power to set policy whereas Benfield was allegedly associating with a fellow employee who was raising complaints to an elected official. Thus, *Burris* does not clearly establish that Benfield had a protected right to associate with Warren in support of the Davlin Letter. Therefore, the Court finds that Magee is entitled to qualified immunity on Benfield's free association claim.

2.  **Free Speech Claim**

Benfield has also asserted a free speech claim, alleging that he was fired because he

---

*Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991) (support for a manager's political opponent). *But see Sherrod v. City of W. Univ. Place*, 20 F.3d 1169 (5th Cir. 1994) (per curiam) (unpublished) (holding that mere social association with political figures is not protected). A precedential case also suggests that an employee's perceived endorsement of a specific political agenda—gender equality—may be a protected association. *Steadman v. Tex. Rangers*, 179 F.3d 360 (5th Cir. 1999).

refused to "falsely testify or provide false information against... Warren." [Record Document 1 at 7]. Because Magee treats Benfield's claim as a free association claim only, Magee does not address Benfield's allegation that he was retaliated against for refusing to provide a false statement. [Record Document 5-1 at 14–15]. The Court therefore declines to consider this issue sua sponte and will not dismiss Benfield's free speech claim at this time.

### 3. Louisiana Whistleblower Claim

Because Benfield concedes that his claim against Magee under La. R.S. 23:967(A) should be dismissed as insufficiently pleaded, [Record Document 14 at 18], the Court will dismiss it with prejudice.

## III. Conclusion

In light of the foregoing, the motion to dismiss [Record Document 5] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Benfield's free association claim and his claim under La. R.S. 23:967(A), but **DENIED** as to Warren's and Benfield's free speech claims.

**IT IS ORDERED** that Benfield's free association claim and his claim under La. R.S. 23:967(A) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties are referred to the Magistrate Judge for entry of a scheduling order.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___ day of July, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

18